IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–01782–KMT

ARTIE M. JONES,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

# ORDER

---

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Artie M. Jones's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant applied for DIB in February 2011, alleging that she had been disabled since August 2010 by bi-polar disorder, severe depression, idiopathic hypersomnia, essential tremor, pulmonary hypertension, brain lesions, and chronic pain. (*See* Doc. No. 13, Social Security Administrative Record ["AR"] at 138, 177.) The Commissioner denied her application. (*Id.* at 92.) Following the denial, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 35–65, 83.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was still capable of performing substantial gainful work in the national economy. (*See id.* at 28–29.) The

Appeals Council subsequently denied Claimant's request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Claimant timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Title II of the Act awards Social Security benefits to claimants who meet certain eligibility requirements. 42 U.S.C. § 423(a). To receive DIB, a claimant must be disabled. § 423(a)(1)(E). The Social Security Commissioner has established a five-step sequential process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who works is not disabled, regardless of the medical findings.

2.  The ALJ must then determine whether the claimed impairment is "severe." A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5.  If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the

Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and case law. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

## ANALYSIS

Claimant alleges the ALJ erred by failing to consider all of the claimant's medically determinable impairments at step two of the disability review process. (*See* Doc. No. 16 [Opening Br.] at 16–26, filed Dec. 8, 2014.) All of the other errors the claimant alleges flow from this one error. (*See id.* at 26–27.) According to the claimant, the ALJ's failure to take into account all of the claimant's impairments, alone and in combination, at step two led the ALJ to err at steps three, four, and five. (*See id.*)

3

Step two of the disability review process requires the claimant show that he or she suffers from an impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 155 (quoting 20 CFR § 404.1521(a)) (quotations and alterations omitted). The ALJ must consider all the evidence in the record when determining whether the claimant has a "severe" impairment at step two. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The purpose of step two of the disability review process is to "weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen*, 482 U.S. at 156. For this reason, an ALJ's failure to recognize that an impairment or combination of impairments is severe at step two is harmless so long as the ALJ ultimately proceeds to the next step of the disability review process. *See Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Nevertheless, failure to recognize a severe medically determinable impairment at step two may affect the remainder of the ALJ's analysis because the ALJ must consider any severe impairments found at step two throughout the remainder of the disability review process. *See* 20 C.F.R. § 404.1523.

Here, the ALJ proceeded to step three after determining that some of the claimant's impairments were severe. (*See* AR at 21.) Thus, even if the claimant is correct that the ALJ failed to consider all of the claimant's impairments and the combination of those impairments, the error at step two is harmless because the ALJ proceeded to step three of the disability review process. But because the claimant argues that the ALJs' failure to account for all of the claimant's impairments at step two meant that the ALJ failed to consider those impairments at

steps three, four, and five, the court examines whether the ALJ considered all of the claimant's medically determinable impairments, alone and in combination.

The claimant does not specify which impairments the ALJ allegedly failed to consider, but in her DIB application the claimant claimed disability resulting from seven conditions, including bi-polar disorder, severe depression, idiopathic hypersomnia, essential tremor, pulmonary hypertension, brain lesions, and chronic pain. (*Id.* at 177.)  During the administrative hearing, the claimant discussed her idiopathic hypersomnia, depression, and chronic pain. (*See id.* at 39–61.)  The claimant mentioned her bi-polar disorder, tremors, brain lesions, and restless leg syndrome. (*See id.*)  She did not mention pulmonary hypertension, but she did mention heart palpitations, which is a symptom of pulmonary hypertension.[1] (*See id.*)

In the step two section of the ALJ's written decision, the ALJ found that the claimant's idiopathic hypersomnia, neck pain, depression, and anxiety qualified as "severe" impairments, stating that "the evidence establishes that the above impairments each impose more than a minimal restriction on the claimant's ability to perform basic work activities and, thus, are severe impairments." (*Id.* at 21.)  In this section of the written decision, the ALJ did not mention any of the other impairments alleged by the claimant or indicate that she considered them. (*See id.*)

In the RFC assessment section of the written decision, the ALJ stated that the claimant alleges disability "primarily" because of four conditions, including idiopathic hypersomnia, neck pain, depression, and anxiety. (*Id.* at 23.)  In that same section of the written decision, the ALJ went on to list the symptoms experienced by the claimant, including: excessive daytime sleepiness; fatigue; neck, shoulder, and arm pain; poor concentration and memory; feelings of

---

[1] *Pulmonary Hypertension: Symptoms*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/pulmonary-hypertension/basics/symptoms/con-20030959 (last visited Sept. 18, 2015).

hopelessness; and limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, completing tasks, and using her hands. (*Id.*)

The ALJ reviewed and gave "some weight" in the written decision to the State Disability Determination Services physician, Dr. Ryan. (*Id.* at 27.) Dr. Ryan noted and evaluated the claimant's alleged disabling impairments, including bipolar disorder, tremor, idiopathic hypertension, pulmonary hypertension, anxiety, and pain. (*See id.* at 66.) Dr. Ryan diagnosed the claimant with bipolar disorder but ruled out generalized anxiety disorder. (*See id.* at 71.) Dr. Ryan's report states that the medical evidence "does not indicate that the severity of the [symptoms] meets or equals a listing." (*Id.*) The report notes that "pain and other symptoms may interfere at times" with the claimant's recall and concentration. (*Id.*) The report also restates another doctor's notes that as of November 2010, the claimant's essential tremor was well-controlled by medications, that the narcolepsy without idiopathic hypersomnia responded well to medication, and the claimant's restless leg syndrome was in remission. (*See id.* at 71– 72.) Reviewing the credibility of the medical evidence, the Dr. Ryan stated that the claimant has symptoms "related to severe physical MDI" and that, again, the evidence does not indicate that the claimant's symptoms meet or equal a listing. (*Id.* at 72.) In the case analysis section of the Dr. Ryan's findings, Dr. Ryan listed "Affective Disorders" and "Disorders of the Muscle, Ligament and Fascia" as severe, and "Minor Motor Seizures" as non-severe. (*Id.*) Dr. Ryan specifically addressed the Appendix I requirements for section 12.04, but not for any other section. (*See id.* at 72–73.)

Although the ALJ did not expressly state that she considered all of the claimant's impairments, alone and in combination, it is clear from the record as a whole that she did. Not

only did she expressly find the claimant's idiopathic hypersomnia, neck pain, depression, and anxiety to be "severe" impairments, she heard the claimant's testimony about her symptoms and conditions (including brain lesions); she summarized the claimant's primary concerns and listed all of her symptoms in the RFC analysis; and she clearly considered and valued Dr. Ryan's reports that evaluated each of the claimant's alleged disabling impairments, with perhaps the exception of the brain lesions.

The court therefore rejects Claimant's primary allegation of error.  The court does, however, proceed to the claimant's step three, four, and five arguments because those arguments may be sufficiently independent from the claimant's step-two arguments to merit the court's separate consideration.

*Impact at Step Three*

The claimant argues that the ALJ's step-two failure resulted in the ALJ's failure to consider and explain at step three whether the claimant's medically determinable impairments met or equaled an Appendix 1 listing.  (*See* Opening Br. at 27–28; Doc. No. 20 [Reply Br.] at 7, filed Feb. 20, 2015.)

At step three, the ALJ began by announcing that she considered the Appendix 1 listings applicable to the claimant's severe impairments, but found that the medical evidence "does not document listing-level severity."  (AR at 21.)  The ALJ said that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.  (*Id.*)  The ALJ also stated that "the claimant has not alleged meeting or equally [sic] any listing."  (*Id.*)  Next, the ALJ explained why the severity of the

claimant's mental impairments did not meet the criteria of sections 12.04 and 12.06 of the listings, addressing those sections' Paragraph B and C criteria one by one.  (*See id.* at 21–23.)

It is evident to the court that the ALJ did, in fact, consider the claimant's medically determinable impairments and explain why those impairments did not meet or equal a listing. The case the claimant cites to support her argument only reinforces this conclusion.  In *Clifton v. Chater*, the Court reversed an ALJ's decision because the ALJ did not discuss the evidence or state his reasons for determining that the claimant was not disabled at step three.  79 F.3d 1007, 1009 (10th Cir. 1996).  In that case, the ALJ did not even identify the relevant listings.  *Id.*  That ALJ concluded, without explanation, that the claimant did not meet any of the Appendix 1 listings.  *Id.*  That is the opposite of what the ALJ did here.  Here, the ALJ explained why the claimant's medically determinable impairments did not meet any Appendix 1 listings.  The ALJ specifically cited section 12.04 and 12.06 and potentially relevant listings and explained why, criterion by criterion, the claimant's mental impairments were not severe under those sections.

The claimant does not contest the ALJ's step-three conclusions that the claimant's idiopathic hypersomnia, neck pain, depression, and anxiety do not meet or equal an Appendix 1 listing.  (*See* Opening Br. at 27–28.)  Nor does the claimant identify those specific impairments or listings the ALJ failed to consider or examine.  (*See id.*)  The court therefore rejects the claimant's step-three arguments.

*Impact at Step Four*

The claimant argues that the ALJ's step two failure rendered the ALJ's step-four RFC analysis deficient and unsupported by substantial evidence.  (*See* Opening Br. at 28–32.) Specifically, the claimant argues that had the ALJ properly considered all of the claimant's

impairments at step two, then the ALJ would have given more credit to the claimant's subjective claims and found the claimant was incapable of the kind of work suggested by the ALJ's RFC assessment. (*See id.* at 28.) As part of this argument, the claimant faults for the ALJ for not explaining why moderate mental limitations that the ALJ found at step three were consistent with the RFC the ALJ assigned the claimant. (*See id.* at 30–31.)

Before completing step four of the disability review process, the ALJ must assess the claimant's RFC, which is the most the claimant can do in a work setting on a regular and continuing basis despite the limitations imposed by his or her impairments. SSR 96-8p, 1996 WL 374184 at *1, 3. When determining the claimant's RFC, the ALJ must consider all the relevant evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the ALJ's written decision, the ALJ must explain how the evidence supports each of his or her conclusions. *Id.* at *7. As part of that explanation, the ALJ must "cite specific medical facts and nonmedical evidence and explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.*

Here, the ALJ found the claimant had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a less than full range of light work as defined in 20 CFR 404.1567(b). The claimant is limited to occasional overhead reaching and occasional pushing and pulling. All remaining postural movements can be performed on an occasional basis. She can perform frequent handwork, but not constant or at a fast pace. The claimant is limited to no working at heights or around hazardous conditions. The claimant can perform unskilled work with limited public contact.

(AR at 23.) To begin the ALJ's RFC assessment, the ALJ asserted that she "considered all symptoms and the extent to which these symptoms can reasonably accepted as consistent with the objective medical evidence and other evidence . . . ." (*Id.*) The ALJ then stated that, "after

careful consideration of the evidence" the ALJ found that the claimant's symptoms are not credible "to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*)  The ALJ offered several reasons for this conclusion.  First, the ALJ explained that the claimant had largely recovered from her idiopathic hypersomnia (excessive daytime sleepiness) after proper treatment.  (*See id.* at 24.)  Second, the ALJ noted that the treating notes from the claimant's psychiatrist consistently show normal mental status evaluations, with the most recent record showing that the claimant was stable and "doing good."  (*See id.*)  Third, the ALJ pointed out that the claimant's positive response to treatment for neck and shoulder pain. (*See id.*)  The ALJ cited to several medical records tending to show mostly normal musculoskeletal function and pain levels that did not affect mood or affect and were being treated by medications and physical therapy without side effects.  (*See id.*)  Fourth, after noting the claimant's reports of stress, tearfulness, and depression to her primary care physician, the ALJ stated that "it seems rather inconsistent that despite the claimant's reports of increased symptomology to [her primary care physician], she made no such reports to her [other doctors]." (*Id.* at 25.)  The ALJ then restated some notes from these other doctors indicating that the claimant was "doing good" and had "significant improvement in her hypersomnia."  (*Id.*)  Fifth, the ALJ placed particular significance on one doctor's disagreement with the claimant that she was disabled after the claimant inquired about seeking permanent disability.  (*See id.*)  According to the ALJ, that doctor reported that the claimant was seeking permanent disability because her primary care physician wanted her to be "in a less stressful position at work," and reported that the claimant was psychiatrically "o.k." with "good mood stability."  (*Id.*)  Sixth, the ALJ also pointed out that six days after the claimant's meeting with that doctor, a psychological

consultative examination found that the claimant did not have any "significant psychological or cognitive defects" on the mental status exam and performed well overall.  (*Id.*)  Seventh, the ALJ afforded only "limited weight" to the claimant's primary care physician, whose reports of "increased symptomology" the ALJ found inconsistent with the evidence and with the claimant's other doctor's reports.  (*See id.* at 25–26.)  Eighth, the ALJ found the claimant's testimony about her depression and anxiety was inconsistent with her failure to consistently seek treatment.  (*See id.* at 26.)  Ninth, the ALJ stated that the claimant's alleged pain is inconsistent with the "little or no findings on physical examinations."  (*See id.*)  Tenth, the ALJ noted the claimant's history of narcotic and benzodiazepine abuse "tends to diminish the severity of the claimant's alleged pain and also casts doubt on whether at times, the alleged pain occurred at all, suggesting it may have been used solely as a means of requesting narcotic pain medication."  (*Id.*)  Eleventh, the ALJ used the claimant's daily activities and willingness to seek employment to "establish that she has substantially greater functional capabilities" than the claimant alleged.  (*See id.* at 26–27.)  Twelfth, the ALJ gave "considerable" weight to the opinion of the consultative examiner and "some" weight to Dr. Ryan's opinion that the claimant was capable of the functions the ALJ ultimately included in the claimant's RFC.  (*See id.* at 27.)

Though the court's conclusion that the ALJ considered all of the claimant's medically determinable impairments at step two was based on the ALJ's step four RFC assessment, the court concludes that the ALJ considered the all of the claimant's impairments, alone and in combination, at step five as well.  The ALJ not only said that she considered the claimant's impairments, she demonstrated that she did by thoroughly discussing the evidence, evaluating the credibility of the claimant's subjective allegations, and affording "some" weight to Dr.

Ryan's opinion, whose report to the ALJ, as already discussed, evaluates the claimant's alleged disabling impairments, symptoms, and alleged limitations.

The court also disagrees with the claimant that the ALJ would have given more credit to the claimant's subjective claims had she considered all of the claimant's impairments. Not only did the ALJ consider the claimant's impairments at steps two and four, the ALJ also provided twelve distinct reasons, all supported by the evidence, for doubting the intensity, persistence, and limiting effects of the claimant's impairments.

The court does, however, agree with the claimant that the ALJ did not explain why the moderate mental limitations she found at step three, and accepted as part of the consultative examiner's opinion, "allowed the performance of unskilled work." (*See* Opening Br. at 30–31.) The only reference in the written decision to the connection between the claimant's moderate mental limitations and the RFC is the ALJ's statement, "The consultative examination of the claimant supports the residential functional capacity as described above." (*See* AR at 27.) The "as above" evaluates the claimant's allegations, assesses the evidence, and weighs several medical source's opinions, but does not explain the absence of the claimant's moderate (or mild) mental limitations from the RFC or how "unskilled work" adequately incorporates those mental limitations. (*See id.* at 23–27.) Nor does the opinion discuss unskilled work as a limitation or explain why the ALJ included it. (*See id.* at 23–27.) This is reversible error. The Commissioner's regulations require the ALJ to explain how the evidence supports each of her conclusions. SSR 96-8p, 1996 WL 374184 at *7. With no explanation, it is impossible for the court to determine whether the ALJ's RFC assessment is supported by substantial evidence. Moreover, the Tenth Circuit Court of Appeals reversed an ALJ's decision for very same reasons.

In *Crowder v. Colvin*, the Court reversed and remanded an ALJ's decision because that ALJ failed to explain the absence of the claimant's moderate mental limitations from the ALJ's RFC assessment. *Crowder v. Colvin*, 561 F. App'x 740, 745–46 (10th Cir. 2014).

Having discovered a reversible error, the court does not reach the claimant's remaining arguments. The issues raised in those arguments may be resolved by reconsideration and rehearing. The court expresses no opinion about the ALJ's ultimate determination as to whether the claimant is disabled within the meaning of the Act.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner. It is further

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 22nd day of September, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge